E-FILED
Thursday, 09 May, 2013  12:38:24 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| JEFFREY T. JONES and CHARLENE VINCENT, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) | No. 10-3131 |
| ) | |
| SHAWN PETTIT, Police Officer, City of Lincoln; KEITH DeVORE, Police Officer, City of Lincoln; and KEVIN LYNN, Police Officer, City of Lincoln, ) ) ) ) ) ) | |
| Defendants. ) | |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge.

This cause is before the Court on the Motion for Summary

Judgment filed by Defendants' Shawn Pettit, Keith DeVore, and Kevin

Lynn (d/e 27).  The Motion for Summary Judgment is DENIED.

Defendants have not demonstrated that no genuine issue of material fact

exists for trial or that they are entitled to judgment as a matter of law.

## I. BACKGROUND

This lawsuit arises out of two incidents.  The first occurred on July 5, 2008 after Plaintiffs Jeffrey T. Jones and Charlene Vincent left a tavern in Lincoln, Illinois.  A confrontation occurred in the parking lot that ultimately resulted in Jones' arrest.  The second incident occurred on August 18, 2009,[1] when authorities arrested Jones after another individual allegedly shot at Jones.

In June 2010, Plaintiffs filed a two-count Complaint pursuant to 42 U.S.C. § 1983.  Compl. (d/e 1).  In Count 1, Jones alleged that Defendants, acting under color of law, caused Jones to suffer personal injury and subjected him to unlawful arrest.  Compl. ¶ 50.  In Count 2, Vincent alleged that Defendants, acting under color of law, caused Vincent to suffer personal injuries.  Compl. ¶ 54.

---

[1] Defendants claim this incident occurred on August 16, 2009.  Plaintiffs also sometimes refer to the August 18, 2009 incident as having occurred on August 16, 2009.  See, e.g., Response, p. 1, Admission to Defs.' Fact No. 11, referencing the August 16, 2009 date.  This dispute is immaterial, however, because it is apparent the parties are referring to the same incident, regardless of the date it occurred.  For purposes of the Motion for Summary Judgment, the Court will use the August 18, 2009 date.

The Complaint and Plaintiffs' Response to Defendants' Motion for Summary Judgment set forth the following claims: (1) a § 1983 claim by Jones against Pettit[2] for excessive force arising out of a July 5, 2008 incident; (2) a § 1983 claim by Jones against Officers DeVore and Lynn for false arrest arising out of a July 5, 2008 incident; (3) a § 1983 claim by Jones against Officer DeVore for excessive force arising out of an August 18, 2009 incident; (4) a § 1983 false arrest claim by Jones against Officer DeVore arising out of an August 18, 2009 incident; and (5) a § 1983 excessive force claim by Vincent against Pettit arising out of a July 5, 2008 incident.

In August 2012, Defendants filed their Motion for Summary Judgment (d/e 27).  Defendants assert that (1) Pettit was not acting under color of law; (2) a constitutional violation did not occur during the July 5, 2008 arrest of Jones; (3) collateral estoppel mandates dismissal of the claims made in connection with the August 18, 2009 incident; (4)

---

[2] Although Pettit is a City of Lincoln police officer, one of the issues in this case is whether Pettit was acting color of law when the July 5, 2008 incident occurred. Therefore, the Court will refer to Defendant Pettit simply as Pettit rather than "Officer Pettit."

Jones cannot seek damages for the alleged excessive force during the August 18, 2009 incident because such recovery would undermine his criminal conviction in state court; and (5) Defendants are entitled to qualified immunity.   In February 2013, Plaintiffs filed their Response. Defendants have not filed a Reply.

## II. FACTS

Defendants do not set forth the purported undisputed facts that describe the incidents that occurred on July 5, 2008 and August 18, 2009.  Therefore, the following facts are taken primarily from the Additional Material Facts listed in Plaintiffs' Response to Defendants' Motion for Summary Judgment.  Citations to the deposition transcripts attached by both Plaintiffs' and Defendants' pleadings will be made to those attached to Defendants' Motion for Summary Judgment.  The page numbering on the deposition transcripts attached to Plaintiffs' Response are slightly different than those on Defendants' copies.  See Affidavit of Attorney Douglas A. Muck explaining that the depositions transmitted to him by email contained two sets of page numbering.

A.  Facts Pertaining to the July 5, 2008 Incident

While standing in the parking lot after leaving the Alley-Bi tavern, Jones spoke to Jason Lucas.  Jones Fact No. 1; Vincent Fact No. 10. Jones testified that Lucas was an off-duty police officer and  Jones had known Lucas for years.  See Jones Dep. p. 17.  While Jones was talking to Lucas, two men ran toward Jones, Vincent, and Lucas.  See Jones Fact No. 1; Vincent Fact No. 11.

Jones described what occurred thereafter as follows.  Pettit was one of the men who ran up to Jones and Vincent in the parking lot.  Jones Fact No. 1.  Jones testified Pettit came running up because Pettit assumed Jones was messing with Officer Lucas.  Jones Fact No. 70. Plaintiffs also cite to Pettit's deposition testimony that Pettit followed Jones toward Plaintiffs because Pettit did not know who Jones was and that Pettit was "not going to let another officer, friend, or anybody that's a friend go, potentially whatever might have happened, do it alone."  Pls.' Fact No. 66.

Pettit shoved Jones.  Jones Fact No. 1; <u>see also</u> Jones Fact No. 13 (describing the shove as a poke in the shoulder).  Vincent said, "[W]hoa, you don't want to do that" and put her hands up.  Jones Fact No. 1. Pettit grabbed Vincent's hand, bending her fingers back so far that it pulled off her rings.  Jones Fact No. 1.

Jones told Pettit not to touch Vincent.  Jones Fact No. 2.  Lucas was standing between Jones and Pettit, trying to calm everyone down. Jones Facts Nos. 2, 3.  Pettit reached around Lucas and shoved Jones' shoulder again.  Jones Fact No. 3; <u>see also</u> Jones Fact No. 13 (describing the second shove as an attempt to shove Jones backward); Jones Fact No. 15 (describing the second shove as a punch to the chest).  Vincent put her hands up and said, "[L]ook, I'm telling you, you don't want to do that."  Jones Fact No. 3.  Pettit reached out and grabbed Vincent by the throat.  Jones Fact No. 3.

Pettit reached around one more time, and Vincent tried to stop him.  Jones Fact No. 5.  Pettit again grabbed Vincent by the throat. Jones Fact No. 5.  Jones hit Pettit one time.  Jones Fact No. 5.

After Jones hit Pettit, "they" got them apart.  Jones Fact 11; <u>see</u> <u>also</u> Jones Dep. p. 24 (not identifying who "they" are).  Pettit started yelling threats at Jones and told Jones his address, saying "come get some."  Jones Fact No. 11; <u>see also</u> Vincent Fact Nos. 26, 27, 28, 29 (someone was telling Jones to meet them at a certain address, trying to egg Jones on).  Lucas told Pettit to shut up but Pettit would not stop threatening Jones and telling Jones to come to Pettit's house.  Jones Fact No. 11; <u>see also</u> Jones Dep. p. 25.  Lucas told Jones to leave.  Jones Fact No. 12.  Jones and Vincent left.  Jones Fact No. 12; <u>see also</u> Jones Dep. p. 25.

Vincent described the same incident as follows.  As Pettit ran up to them, Vincent put her hands up and said, "you don't want to do that." Vincent Fact No. 13.  Vincent knew Pettit was running up to start something with Jones because people liked to start fights with Jones. Vincent Facts No. 17, 18, 19.

Pettit pushed Vincent's hands down, took her face, and turned her head.  Vincent Fact No. 13.  Pettit also knocked Vincent's ring off her

finger.  Vincent Fact No. 22.  Pettit picked up Vincent's ring.  Vincent Fact No. 22.  According to Vincent, the next thing that happened was that Pettit got hit.  Vincent Fact No. 22.  Vincent did not see who hit Pettit.  Vincent Fact 23.[3]

After Jones and Vincent returned to their motel, three police cars arrived.  Jones Fact No. 18; Vincent Fact Nos. 34, 35.  Both Officer Lynn and Officer DeVore were present.  Jones Fact No. 18.  Jones was arrested for aggravated battery.  Jones Fact No. 19.  Vincent testified that Officer Lynn told them Jones was arrested for battery of a cop, and that is when they found out Pettit was a cop.  Vincent Fact No. 37; Jones Fact No. 7 ("Jones found out later that Pettit was an off duty Lincoln Police officer").

---

[3] Vincent Fact No. 24 states that "People said Pettit hit her eye," citing Vincent Dep. However, Vincent was asked how she knew Pettit got hit.  She testified "Because they said he hit my eye.  He hit me.  Or he got, I'm going to have a black eye or something.  I don't recall exactly.  I just know he got hit."  See Vincent Dep. p. 24. At no other time in her deposition does she state that Pettit hit her eye.  The context of the portion cited by Plaintiffs in Fact 24 is that Pettit said "he hit my eye." Moreover, the record also suggests that Pettit was hit in the eye area.  See Lucas Dep. p. 21.

During the arrest, Officer Lynn said, "we are going to show you what happens when you 'f___' with one of ours." Jones Fact No. 19; see also Jones Dep. p. 29; Vincent Fact No. 59 (an officer said, "that's what you get when you mess with one of ours"). Jones was placed in handcuffs and did not resist. Jones Fact Nos. 26, 27. The arrest was very professional. Jones Fact No. 28; see also Jones Dep. p. 32 (DeVore was very professional); Jones Dep. p. 39 (DeVore was very professional about the whole thing).

Vincent, however, testified that Officer Lynn was an asshole to her. Vincent Fact No. 49. Vincent wanted Pettit arrested for laying hands on her but was told they could not arrest Pettit because he was a police officer. Vincent Fact Nos. 60, 61.

Jones was held in jail for five days before he was charged and "put a bond on" him. Jones Fact No. 23; see also Jones Dep. p. 31. At his first appearance, all charges were dropped, and Jones got his bond money back without the ten percent statutory reduction. Jones Fact No. 31.

B.    <u>Facts Pertaining to Other Incidents That Occurred Between Jones and the Lincoln Police Department</u>

After the July 5, 2008 incident, the Lincoln Police Department pursued other incidents involving Jones, including (1) arresting Jones for aggravated battery; the charges were dropped after finding that the "dude fell down the steps and [Jones] did not have anything to do with it"; (2) arresting Jones for arguing with someone in the park, but Jones was never charged; (3) charging Jones with resisting arrest; Jones was found not guilty following a criminal trial; and (4) arresting Jones in April 2009 for violating an order of protection, but there was no order of protection. Jones Facts Nos.  33, 74; <u>see</u> <u>also</u> Jones Dep. p. 40.

C.    <u>Facts Pertaining to the August 18, 2009 Incident</u>

On August 18, 2009, Jones was arrested in connection with a violation of an order of protection, destruction of government property, and unlawful possession of a firearm.  Defs.' Undisputed Fact No. 11 (although referencing August 16, 2009); <u>see</u> <u>also</u> Jones Fact No. 35 (Jones was arrested for unlawful possession of a firearm).  This arose after Ricky Hopp, Vincent's son, shot at Jones four times.  Jones Fact No. 35;

Page **10** of **32**

see also Jones' Dep. p. 46 (indicating that Hopp was 18 years old);

Vincent Dep. p. 47 (Hopp's date of birth is April 27, 1991).  Vincent

was not home when this incident occurred.  Vincent Fact No. 48.

Hopp had an order of protection against Jones, but Jones had been

staying at the same house with Vincent and Hopp for months.  Jones

Fact No. 42; Jones Fact No. 54 (noting that at the time of the shooting

incident there was a valid order of protection on Jones).  Jones went to

the house that day, and Hopp came running with a pistol.  Jones Fact

No. 36.  Hopp shot four times.  Jones Fact No. 36; but see Jones Fact

No. 37 (stating that police recovered four of the six bullets).  Jones

testified that he never got out of the car and left the scene after Hopp

shot at him.  Jones Fact Nos. 39, 40.  Jones denied ever having had a

physical altercation with Hopp.  Jones Fact No. 43.

Jones went to his mother's house, and the police arrived.  Jones

Fact No. 45.  Officer Oltmans was the first on the scene.  Jones Fact No.

46.  Officer DeVore was also present.  Jones Fact No. 63.  Officer

Oltmans pulled a gun, stuck it in Jones' face, and told him to get on the

ground.  Jones Fact No. 46.  The police searched Jones and said he had

bullets in his pocket.  Jones Fact No. 50.  Jones denied having bullets in

his pocket when he was searched.  Jones Fact 51.  Jones denies ever

owning a gun.  Jones Fact No. 52.

After Officer Oltmans and Officer DeVore searched Jones, Officer

DeVore "binged" or "dinged" Jones' head off of the trunk of the car and

then charged Jones with criminal damage to a government vehicle.  Jones

Fact Nos. 64, 67; see also Jones Fact No. 68 (Jones was handcuffed and

they "took the back of his head and dinged it off the trunk").  Because of

this incident, Jones sat in jail for six months before he bonded out for

$10,000.  Jones Fact No. 59.

Plaintiffs also admit the following facts.  On August 19, 2009,

criminal charges were filed against Jones for possession of a firearm and

criminal damage to government property (Logan County Case No. 2009-

CF-143).  Defs.' Undisputed Fact Nos. 13, 14.  On November 10, 2011,

Jones, represented by counsel, pleaded guilty to criminal damage to

government property, a Class 4 felony.  Defs.' Undisputed Fact. No. 15.

As part of the plea agreement, the Class 2 felony possession of a firearm charge was dismissed.  Defs.' Undisputed Fact No. 16.  Jones did not appeal his conviction.  Defs. Undisputed Fact No. 17.  Defendants also asserted, and Plaintiffs admitted, that "a portion of the series of events" giving rise to People v. Jones, Logan County Case No. 2009-CF-143, "are the same portion of the series of events" giving rise to Jones' lawsuit. Defs.' Undisputed Fact No. 18.

## III. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact.  Celotex Corp., 477 U.S. at 323.  Once the movant has met his burden, the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on

which he bears the burden of proof at trial."  <u>Warsco v. Preferred</u>

<u>Technical Group.</u>, 258 F.3d 557, 563 (7th Cir. 2001).

Facts must be viewed in the light most favorable to the non-moving

party, and all reasonable inferences must be drawn for the non-movant.

<u>See</u> <u>Trentadue v. Redmon</u>, 619 F.3d 648, 652 (7th Cir. 2010).  "A

court's role is not to evaluate the weight of the evidence, to judge the

credibility of the witnesses, or to determine the truth of the matter, but

instead to determine whether there is a genuine issue of triable fact."

<u>Keri v. Board of Trs. of Purdue Univ.</u>, 458 F.3d 620, 628 (7th Cir.

2006).

## IV. ANALYSIS

A.    <u>Issues of Fact Remain Regarding Whether Pettit was Acting</u>
      <u>Under Color of Law</u>

Defendants first assert they are entitled to summary judgment on

the excessive force claims against Pettit because Pettit was not acting

under color of law on July 5, 2008.

To prevail on their § 1983 claims, Plaintiffs must prove (1) a

violation of a right secured by the Constitution and laws of the United

States and (2) that the deprivation was committed by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); see also  Zienciuk v. City of Chicago, 2002 WL 1998309, at *5 (N.D. Ill. 2001).  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  West, 487 U.S. at 49, quoting United States v. Classic, 313 U.S. 299, 326 (1941).

Not every action by a state actor, such as an on-duty police officer, occurs under color of law.  Briscoe v. LaHue, 663 F. 2d 713, 721 n. 4 (7th Cir. 1981).  Likewise, just because a police officer is off-duty does not necessarily mean that he is not acting under color of law.  Latuszkin v. City of Chicago, 250 F.3d 502, 505 (7th Cir. 2001).  The critical consideration is the "nature of the specific acts performed."  Latuszkin, 250 F.3d at 505-06; Pickrel v. City of Springfield, Ill., 45 F. 3d 1115, 1118 (1995).

That is, an off-duty police officer will generally be found to have acted under color of law if he purports to exercise official authority. Barna v. City of Perth Amboy, 42 F.3d 809, 815 (3rd Cir. 1994). This manifestation of authority may include "flashing a badge, identifying oneself as a police officer, placing an individual under arrest, or intervening in a dispute involving others pursuant to a duty imposed by police department regulations." Barna, 42 F.3d at 816; see also Pickard v. City of Girard, 70 F. Supp. 2d 802, 806 (N.D. Ohio 1999) (finding two circumstances when an off-duty police officer's actions are state action: "(1) when the officer undertakes purely private action while invoking his authority as a police officer, or as a result of his role as a police officer; and (2) when an off-duty police officer undertakes an official duty").

In this case, however, because Defendants have not adequately complied with Local Rule 7.1(D)(1)(b), this Court cannot determine whether the undisputed facts demonstrate that Pettit did not act under color of law. Local Rule 7.1(D)(1)(b) requires the moving party to list

the undisputed material facts that form the basis for the motion for summary judgment and cite to the documentary evidence supporting it. CDIL-LR 7.1(D)(1)(b).  The nonmoving party may then respond to each undisputed fact and either admit it is undisputed, disputed, undisputed but immaterial, or disputed but immaterial.  CDIL-LR 7.1(D)(2)(b).  The nonmoving party may also list additional material facts.  CDIL-LR 7.1(D)(2)(b)(5).

Defendants' Statement of Undisputed Material Facts only asserts that Pettit was off-duty on July 5, 2008, which Plaintiffs dispute.  See Def. Fact No. 2; Pls.' Resp. p. 2, citing Devore Dep. p. 24 (noting that as far as he knew, city police officers are considered on duty 24 hours a day, 7 days a week).  As noted above, the fact that an officer is off-duty is not dispositive of whether he was acting under color of law.  Gibson v. City of Chicago, 910 F.2d 1510, 1517 (7th Cir. 1990).  Moreover, while Plaintiffs admit in their own Statement of Undisputed Facts that they did not know Pettit was a police officer until after the incident, this fact, while a factor, is not dispositive.  See, e.g., Manning v. Jones, 696 F.

Supp. 1231, 1235 (S.D. Ind. 1988) (noting that one of the factors in determining whether the officers acted under color of law was that the plaintiffs did not know or suspect that the defendants were police officers).  But see Lucas Dep. p. 21 (noting that Jones called Pettit "officer").

Defendants do cite to additional facts in the Argument section in support of their claim that the undisputed facts show that Pettit was not acting under color of law.  See Defs.' Motion p. 6 (citing to portions of the record for the assertion that Pettit was off-duty, not in uniform, did not hold himself out as a police officer during the encounter and was acting as a private citizen in the altercation).  However, because these facts were not listed in the Statement of Undisputed Facts, the Court does not find that these facts are undisputed.

Moreover, even accepting Defendants' claim that Pettit was off duty, not in uniform, and that Pettit did not identify himself as a police officer during the encounter, other facts, taken in the light most favorable to Plaintiffs, show genuine issues of material fact remain concerning

whether Pettit's actions related in some way to the performance of a

police duty.

From the Court's reading of the depositions, it is clear the parties

dispute the exact nature of Pettit's intervention, including the actions

Pettit took during the encounter and the reason for the intervention.

Under Plaintiffs' version of the facts and the reasonable inferences

therefrom, which this Court accepts as true for this summary judgment

motion, Pettit thought Jones and another officer (Lucas) were having a

dispute and intervened in his capacity as an off-duty officer.  See Lucas

Dep. p. 21 (Pettit saw us talking and must have gotten the wrong idea);

see also, e.g., Barna, 42 F.3d at 816 (noting that an off-duty officer may

act under color of law if he intervenes "in a dispute involving others

pursuant to a duty imposed by police department regulations").

Plaintiffs also cite to Officer DeVore's deposition during which

DeVore testified that Lincoln police officers are on duty 24 hours a day,

7 days week.  See DeVore Dep. p. 24.  In addition, Plaintiffs cite to the

Lincoln City Code, which provides that police officers "must be prepared

to act at a moment's notice whenever their services may be required either on call by a superior officer or in view of a violation or threatened violation, of any law of the state or provision of this code."  Lincoln City Code 6-1-11.

This case bears many similarities to <u>McCloughan v. City of Springfield</u>,172 F. Supp. 2d 1009 (C.D. Ill. 2001), where the district judge denied the defendants' Motion for Summary Judgment.  In <u>McCloughan</u>, several off-duty police officers were attending a party in a tavern.  <u>McCloughan</u>, 172 F. Supp. 2d at 1010.  A motor vehicle accident occurred in the parking lot between the plaintiff and the wife of one of the off-duty police officers.  <u>McCloughan</u>, 172 F. Supp. 2d at 1011  The husband ran to the scene, identified himself as a police officer, and attempted to keep the plaintiff from leaving.  <u>McCloughan</u>, 172 F. Supp. 2d at 1011.  The defendant, also an off-duty police officer and the brother-in-law of the other officer, also went to the scene of the accident and attempted to keep the plaintiff from leaving.  A struggle ensued, and the two men (the plaintiff and the defendant) exchanged blows.  The

defendant also kicked the plaintiff while he was kneeling on the ground. McCloughan, 172 F. Supp. 2d at 1011.

The district court found a genuine issue of material fact remained regarding whether the defendant acted under color of law.  The court noted that the defendant was off-duty, not in uniform, did not verbally identify himself as an officer, did not display a badge, service revolver, or handcuffs, and did not inform the plaintiff that he was under arrest.  The court also noted, however, that another police officer had identified himself as a police officer and that the defendant came to the scene after hearing the other officer yelling. The court found that whether the defendant's actions constituted acting under color of law was a jury question.  McCloughan, 172 F. Supp. 2d at 1015.

In this case, while there is no evidence that any of the off-duty police officers identified themselves as police officers, Plaintiffs knew Lucas was a police officer.  Under Plaintiffs' version of the events, a reasonable jury could conclude that Pettit was going to the aid of Lucas in his capacity as a police officer.  See Pettit Dep. p. 18 (testifying that

he followed Lucas because he did not know Jones and did not know what Jones intentions were, stating, "I'm not going to let another officer, friend, or anybody that's a friend go, potentially whatever might have happened, do it alone"). This, along with the evidence that City of Lincoln police officers are on-duty 24 hours a day, 7 days a week and the City ordinance that all officers be prepared to act when they view a violation of threatened violation of law, warrants denial of summary judgment on the claims against Pettit.

B.     Genuine Issues of Material Fact Exist Regarding Whether the Arrest of Jones on July 5, 2008 Was Supported by Probable Cause

Defendants next argue that the arrest of Jones for aggravated battery by Officers Lynn and DeVore did not rise to a constitutional violation. Defendants assert that apart from the alleged threat by Officer Lynn, the arrest was completely professional.

In Plaintiffs' response, Plaintiffs assert that there was no probable cause to arrest Jones on July 5, 2008. Plaintiffs argue that there is a question of fact as to how the incident of July 5, 2008 occurred. Plaintiffs claim that Jones was entitled to self-defense when he struck

Pettit.  Plaintiffs also argue that Jones had a right to protect himself against the use of force to make an arrest.  According to Plaintiffs, because Pettit had grabbed Vincent by the throat, Jones was justified in striking Pettit to prevent further injury to Vincent.  Therefore, according to Plaintiffs, Officers Lynn and DeVore had no probable cause to arrest Jones.

To succeed on his false arrest claim, Jones must prove that he was arrested without probable cause.  Williams v. Rodriguez, 509 F.3d 392, 398 (7th Cir. 2007).  "Probable cause exists if an officer reasonably believes, in light of the facts known to [him] at the time, that a suspect had committed or was committing an offense."  United States v. Reed, 443 F.3d 600, 603 (7th Cir. 2006).  "It is a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances."  Id.

Whether an officer had probable cause is an objective inquiry.  Abbott v. Sangamon County, Ill., 705 F.3d 706, 714 (7th Cir. 2013).  The "officer's subjective state of mind and beliefs are irrelevant."  Abbott,

705 F.3d at 714.  Generally, whether there is probable cause is a jury question, but "when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them," a court may decide the issue.  <u>Booker v. Ward</u>, 94 F.3d 1052, 1058 (7th Cir. 1996) (citation and internal quotations omitted).

The existence of probable cause depends on the elements of the criminal offense or offenses as defined by state law.  <u>Abbott</u>, 706 F.3d at 715 (also noting that an arrest can be supported by probable cause that the arrestee committed any crime, even if it is not the one the officer believes the arrestee committed).  In Illinois, a person commits aggravated battery when:

> in committing a battery, other than by the discharge of a firearm, he or she knowingly does any of the following:
>
> (1) Causes great bodily harm or permanent disability or disfigurement.
>
> * * *
>
> (3)  Causes great bodily harm or permanent disability or disfigurement to an individual whom the person knows to be a peace officer . . .  [.]

Page **24** of **32**

720 ILCS 5/12-3.05.  A person commits battery if he:

> knowingly <u>without</u> <u>legal</u> <u>justification</u> by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual.

720 ILCS 5/12-3 (emphasis added).

This Court would typically, at this point, determine whether a genuine issue remained regarding whether Officers Lynn and DeVore had probable cause to arrest Jones.  However, Defendants did not provide the purported undisputed facts that would have shown Officers Lynn and DeVore had probable cause to arrest Jones.

Moreover, Jones claims he acted in self-defense.  The parties do not adequately address the significance of Jones' self-defense claim to the issue of probable cause.  <u>Compare</u> <u>Driebel v. Milwaukee</u>, 298 F.3d 622, 645 (7th Cir. 2002) ("[B]ased on the facts known to [the officer] at the time of the arrest, supported with the statements of several witnesses ruling out the possibility of self-defense, we believe there was sufficient evidence to establish probable cause that the officer committed the crime of battery") <u>with</u> <u>McConnell v. McKillip</u>, 573 F. Supp. 2d 1090, 1102

(S.D. Ind. 2008) (finding that whether the plaintiff's use of force was justified was irrelevant to the question of whether the officers had probable cause to arrest him); see also Mahaffey v. P.O. R. Misner, 2009 WL 2392087, at *5 (N.D. Ill. 2009) ("Courts have taken self defense into account when making determinations of probable cause"); Kosyla v. Dvorak, 2005 WL 1651719, at *2 (N.D. Ill. 2005) (noting that the defendant lacked probable cause to arrest the plaintiff only if the plaintiff did not hit the defendant at all or did so only in self-defense). Therefore, because Defendants have not demonstrated that no genuine issue of material fact exists, the Motion for Summary Judgment on this claim is denied.

C.   Defendants Have Failed to Demonstrate that Jones' Conviction for Damage to Government Property Mandates Dismissal of his Claim in Connection with the August 18, 2009 Incident

One of Jones' claims is that Officer DeVore arrested Jones on August 18, 2009 and, during the course of that arrest, slammed Jones' head into the trunk of the police car.

Defendants argue that Jones' conviction in Logan County case No. 2009-CF-143 mandates dismissal of his § 1983 claims in connection with the events of August 18, 2009 either under the Illinois collateral estoppel doctrine or because his success on his § 1983 claim would impliedly invalidate Jones' conviction for damage to government property.  See Heck v. Humphrey, 512 U.S. 477 (1994).  Defendants assert, and Plaintiffs do not dispute, that Jones pleaded guilty to criminal damage to government property and that a portion of the events giving rise to the criminal case are the same portion of the series of events giving rise to Plaintiffs' civil lawsuit.  Defs.' Fact Nos. 15, 18.

Plaintiffs respond that the fact that Jones pleaded guilty to damage to government property does not preclude him from litigating his claim that his arrest on August 18, 2009 was occasioned by excessive force.

The doctrine of collateral estoppel exists to prevent litigants from re-litigating issues that have already been the subject of a fair legal determination.  Du Page Forklift Serv., Inc. v. Material Handling Servs., Inc., 195 Ill. 2d 71, 77 (2001).  "Whether a plaintiff's § 1983 claim is

barred by a state court conviction is determined by the state's rules of

collateral estoppel." <u>Brown v. City of Chicago</u>, 599 F.3d 772, 774 (7th

Cir. 2010) (citing 28 U.S.C. § 1738). Under Illinois law, collateral

estoppel is properly invoked when:

> (1) the party against whom the estoppel is asserted was a party to the prior adjudication, (2) the issues which form the basis of the estoppel were actually litigated and decided on the merits in the prior suit; (3) the resolution of the particular issue was necessary to the court's judgments, and (4) the issues are identical to issues raised in the subsequent suit.

<u>Wells v. Coker</u>, 707 F.3d 756, 761 (7th Cir. 2013) (Illinois law).

In this case, the Court simply does not have enough information

about the underlying state court criminal case to determine whether

collateral estoppel should apply. Plaintiffs admit that charges were

brought against Jones arising out of the incident on August 18, 2009,

Jones pleaded guilty to criminal damage to government property, and a

portion of the events giving rise to the state court criminal case are the

same portion of the series of events giving rise to Jones' suit. However,

Defendants have not shown that Jones pleaded guilty to criminal damage

to government property for putting the dent in the police car. While this

is implicit in their Motion, Defendants have the burden of showing the absence of a triable issue.  See, e.g., Celotex Corp., 477 U.S. at 322. However, Defendants have not submitted the charging instrument, the plea agreement, or the transcript of the plea hearing.

Defendants' failure to provide adequate information also prevents summary judgment under Heck.  Pursuant to Heck, a plaintiff may not recover under § 1983 if success on his civil claim would undermine his conviction in state court.  Heck, 512 U.S. at 486-87 (noting that such claim must be dismissed unless the plaintiff can show that the conviction or sentence has been invalidated).   However, if a plaintiff could succeed on his civil action, and his success would not demonstrate the invalidity of the outstanding criminal judgment against the plaintiff, the action may proceed.  Heck, 512 at 487.

In this case, without knowing more about Jones' underlying conviction, the Court cannot determine whether a verdict in Jones' favor on his § 1983 claim would undermine his conviction for criminal damage

to property.  Therefore, the motion for summary judgment on the claims

arising out of the August 18, 2009 incident is denied.

D.    Defendants Have not Shown They are Entitled to Qualified
      Immunity

Defendant last argue that the facts alleged by Jones and Vincent

cannot establish a violation of a constitutional right by any of the

Defendants because (1) Pettit was not acting under color of law; and (2)

Officer Lynn's actions cannot be construed as violating a constitutional

right.

Qualified immunity protects governmental actors "from liability for

civil damages insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would

have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Qualified immunity balances the interest of holding "public officials

accountable when they exercise power irresponsibly" with the interest in

shielding officials from "liability when they perform their duties

reasonably."  Pearson v. Callahan, 555 U.S. 223, 231 (2009).  To

determine whether a defendant is entitled to qualified immunity, a court

must determine: (1) "whether the facts, taken in the light most favorable to the plaintiffs, show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation. <u>Gonzalez v. City of Elgin</u>, 578 F.3d 526, 540 (7th Cir. 2009), citing <u>Pearson</u>, 555 U.S. 223.

As noted above, questions of fact remain regarding whether Pettit acted under color of law and whether Officer Lynn violated a constitutional right.  Therefore, Defendants have not shown they are entitled to qualified immunity.

## V. CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgment (27) is DENIED.  This case is set for a final pretrial conference on July 8, 2013 at 3:00 p.m. in Courtroom 1 before U.S. District Judge Sue E. Myerscough.  At the final pretrial conference, the matter will be given a firm trial date.

The parties are advised to comply with Local Rule 16.1 regarding preparation of the proposed final pretrial order and to read the General

Rules for Conduct of Counsel in the Courtroom and During Trial in

Proceedings before U.S. District Judge Sue Myerscough, available at the

Court's website: www.ilcd.uscourts.gov.  In addition, the Court requests

that the parties tender any proposed voir dire questions and the proposed

jury instructions (joint and individual) to the Court by July 1, 2013.

Objections to the proposed voir dire questions and jury instructions must

be made by July 3, 2013.  The parties are also advised to bring their

marked exhibits to the final pretrial conference.

ENTER: May 9, 2013

FOR THE COURT:

                                        s/Sue E Myerscough
                             SUE E. MYERSCOUGH
                             UNITED STATES DISTRICT JUDGE